O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MAURICE SMITH, | ) | Case No. CV 09-03631 DDP (JCx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING IN PART MOTION TO** |
| v. | ) | **DISMISS COMPLAINT** |
| | ) | |
| WORLDLINK INC.; PRO STAFF SAMSUNG TELECOMMUNICATIONS AMERICA, INC., | ) ) ) | [Motion filed on June 19, 2009] |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.    BACKGROUND**

In May 2007, Plaintiff Maurice Smith was hired by Worldlink, Inc. ("Worldlink") as a District Field Manager. (Compl. ¶ 7.) Defendant Samsung Telecommunications America, Inc. ("Samsung") contracted with Worldlink to conduct market research and sales surveys; and Plaintiff was assigned to visit the stores of various cell phone providers and conduct surveys and discuss sales of the Samsung cell phone models that the providers carried. (Id. ¶ 8.) Plaintiff was required to turn in regular reports detailing his activities, and reported directly to supervisor Jeff Curtis ("Curtis"). (Id. ¶¶ 9-10.) Curtis was a manager and employee of Dobbs Temporary Services, Inc. d/b/a Pro Staff Personnel Services

("Pro Staff"),[1] a company contracted by either Worldlink or Samsung to provide management of the marketing managers for Samsung. (Id. ¶ 10.) Plaintiff's next highest supervisor was Ty Jones[2] ("Jones"), a director at Samsung. (Id.)

Plaintiff is twenty-six years old and African American. (Id. ¶ 12.) At a September 2007 meeting of marketing personnel, Jones pulled aside Plaintiff, two Muslim employees, and another African-American man to talk to them separately. (Id.) Jones told Plaintiff, specifically, that he had pulled him aside because his "appearance and manner of dress were offensive to the other members of his marketing team." (Id.) Plaintiff has glasses and a goatee, a short "Afro-style" haircut, and typically dresses in a suit and bow-tie for work. (Id.) Plaintiff alleges that his style of appearance is derivative and similar to the style worn by the "Black Muslim movement, lead in the sixties by Malcom X and presently by Louis Farrakhan"; although Plaintiff is not a member of that movement or Muslim. (Id.) During their conversation, Jones allegedly continued to generally extol his faith, which is Christian, and to inform Plaintiff that Jones is a fervent believer who is very active in his church's ministry group. (Id. ¶ 13.)

Afterwards, Plaintiff complained to Curtis about his conversation with Jones and asked Curtis what he thought the remarks meant. (Id. ¶ 14.) Curtis declined to explain his opinion of Jones' remarks. (Id.) However, Plaintiff alleges that, shortly after the marketing meeting, Curtis began to regularly pressure

---

[1] Defendant was erroneously sued and served as "Pro Staff."

[2] Jones' race, ethnicity, and national origin are not alleged.

Plaintiff to turn in his reports on time. (Id.) According to Plaintiff, completing his reports involves "delays for technical reasons," which Curtis realized, but that Curtis nevertheless issued a warning to Plaintiff against tardy reporting. (Id.) Other employees, who were not African-American nor perceived as Muslim, turned in late reports without similar repercussions or discipline. (Id.) After one particular instance where Curtis disciplined Plaintiff, Curtis allegedly told Plaintiff that he did not think Plaintiff was capable of correcting his behavior because of Plaintiff's "background," which Curtis allegedly "meant . . . as a clear reference" to negative stereotypes about African Americans. (Id. ¶ 15.)

On November 21, 2007, Plaintiff was terminated from Worldlink by Curtis and Jones. (Id. ¶ 16.) Jones claimed that Plaintiff was terminated because he turned his most recent report in late. (Id.) Plaintiff alleges this explanation was false, because the report had actually been turned in on time. (Id.) Plaintiff alleges the true reason for his termination is that he is black and was perceived by Curtis and Jones to be Muslim. (Id.)

Plaintiff filed an administrative complaint with the California Department of Fair Employment and Housing ("DFEH") and was issued a right-to-sue letter. On February 2, 2009, Plaintiff filed a complaint against Worldlink, Samsung, and Pro Staff, based on violations of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, et seq.:

> (1) Plaintiff was terminated because of his race in violation of Cal.Gov.Code § 12940(a).
> (2) Plaintiff was terminated because of his perceived religion in violation of Cal.Gov.Code § 12940(a).

3

    (3) Plaintiff was wrongfully terminated in violation of public policy.

Defendant Pro Staff now moves to dismiss all of the above claims.

**II.  LEGAL STANDARD**

Under Rule 12(b)(6), a complaint is dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a 12(b)(6) motion, all allegations of material fact are accepted as true and should be construed in the light most favorable to the non-moving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-338 (9th Cir. 1996).  The plaintiff's obligation requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009).  However, the complaint must state "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570.

**III. DISCUSSION**

    A.    <u>Exhaustion of Administrative Remedies</u>

Under FEHA, an employee must exhaust administrative remedies by filing an administrative complaint and obtaining a right to sue letter.  Blum v. Superior Court, 141 Cal. App. 4th 418, 422 (Cal. Ct. App. 2006)(internal quotation omitted).  A plaintiff's failure to exhaust administrative remedies strips this Court of jurisdiction to hear a FEHA claim.  Miller v. United Airlines, Inc., 174 Cal. App. 3d 878, 890 (Cal. Ct. App. 1985).

1    In his complaint, Plaintiff alleges that he received a right-
2 to-sue letter and, accordingly, has exhausted administrative
3 remedies with regard to his first and second claims under FEHA.
4 Plaintiff's third cause of action is for wrongful termination in
5 violation of public policy, which does not require administrative
6 exhaustion.  <u>Williams v. Housing Authority of City of Los Angeles</u>,
7 121 Cal. App. 4th 708 (Cal. Ct. App. 2004)(finding plaintiff was
8 not required to exhaust for a FEHA-related, non-statutory claim for
9 wrongful termination).
10   Pro Staff argues that Plaintiff has failed to allege
11 exhaustion with sufficient particularity or to attach a copy of the
12 administrative charge to his complaint, but provides no authority
13 to support these arguments.  Plaintiff expressly alleges exhaustion
14 of administrative remedies and, for the purposes of this motion,
15 the Court accepts this allegation as true.
16   Therefore, for the purposes of this motion and granting every
17 reasonable inference to Plaintiff, the Court finds that Plaintiff
18 has sufficiently exhausted administrative remedies.
19   B.   <u>Pro Staff's Liability as an "Employer" Under FEHA</u>
20   FEHA prohibits "employers" from discriminating against
21 employees on the basis of various protected categories.  Cal. Gov.
22 Code § 12940(a).  "The fundamental foundation for liability is the
23 existence of an employment relationship between the one who
24 discriminates against another and that other who finds himself the
25 victim of that discrimination."  <u>Vernon v. State</u>, 116 Cal. App. 4th
26 114, 123 (Cal. Ct. App. 2004)(internal quotation omitted); <u>see also</u>
27 <u>Kelly v. Methodist Hospital of So. California</u>, 22 Cal.4th 1108,
28

1116 (2000) (holding that FEHA predicates liability on the status of the defendant as an "employer").

FEHA defines "employer" as "any person regularly employing five or more persons, or any person acting as an agent of an employer." Cal. Gov. Code § 12926(d). "Beyond these limited definitions, the FEHA does not define an employer, employee, or what constitutes employment." Shephard v. Loyola Marymount Univ., 102 Cal. App. 4th 837, 842 (Cal. Ct. App. 2002). Accordingly, the courts have developed various tests to determine the existence of an employer-employee relationship.[3] Because these tests "have little discernible difference between them," this Court will not adhere to one particular test, but rather will, as other courts have done, examine "the totality of circumstances that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties." Vernon, 116 Cal. App. 4th at 124 (internal quotation omitted). This includes consideration of the following factors:

> [1] payment of salary or other employment benefits and Social Security taxes, [2] the ownership of the equipment necessary to performance of the job, [3] the location where the work is performed, [4] the obligation of the defendant to train the employee, [5] the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, [6] the authority to establish work schedules and assignments, [7] the defendant's discretion to determine the amount of compensation earned by the employee, [8] the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the

---

[3] Four tests are widely recognized by the courts: (1) the traditional common law test of "agency"; (2) the "interference test"; (3) the "economic realities" test; and (4) the "hybrid test," which combines elements of the other tests. Vernon v. State, 116 Cal. App. 4th 114, 125 n.7 (Cal. Ct. App. 2004).

6

> defendant's regular business operations, [9] the skill required in the particular occupation, [10] the duration of the relationship of the parties, and [11] the duration of the plaintiff's employment.

Id. at 125. These "individual factors cannot be applied mechanically as separate tests" because "they are intertwined and their weight depends often on particular combinations." Id. (internal quotation omitted). Moreover, although "no one factor is decisive," the most important factor is "the extent of the defendant's right to control the means and manner of the workers' performance." Id. at 126 (internal quotations omitted).

Here, the complaint does not allege that Pro Staff compensated Plaintiff or determined his compensation. "The absence of any direct or indirect remuneration from the defendant to the plaintiff, while not controlling, is at least strong evidence that an employment relationship did not exist."[4] Vernon, 116 Cal. App. 4th at 126. However, Plaintiff reported directly to Curtis and the complaint also supports an inference that Curtis had control over the "manner and means" of Plaintiff's reports. Plaintiff regularly provided these reports to Curtis, and Curtis could determine both when they were due and when to discipline Plaintiff based on "technical" delays. Curtis was also responsible, with Jones, for terminating Plaintiff. Curtis' determination that one of Plaintiff's reports was late provided the basis for Plaintiff's termination, and Curtis was present at the meeting when Plaintiff

---

[4] Some courts have held that direct or indirect compensation paid to the plaintiff by the defendant is a prerequisite to a finding of an employer-employee relationship. See York v. Association of the Bar of the City of New York, 286 F.3d 122, 125 (2nd Cir. 2002); O'Connor v. Davis, 126 F.3d 112, 115-16 (2nd Cir. 1997).

was fired. Finally, Plaintiff's relationship with Curtis continued throughout his period of employment.

Viewing the complaint in the light most favorable to Plaintiff, the Court finds that it cannot say as a matter of law that Pro Staff was not Plaintiff's employer under FEHA.

### C. Aiding and Abetting Violation of FEHA

FEHA makes it unlawful for "any person[5] to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden" by FEHA, or "to attempt to do so." Cal. Gov. Code § 12940(i). Although FEHA does not define "aiding and abetting," California courts have adopted the common law definition of that phrase. Under common law, a person "aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Fiol v. Doillstedt, 50 Cal. App. 4th 1318, 1325-26 (Cal. Ct. App. 1996) (internal quotation omitted).

However, as noted by Pro Staff, Plaintiff does not actually frame a cause of action based on aiding and abetting in his complaint, and this legal theory was only raised for the first time in Plaintiff's opposition to this motion to dismiss. This is not sufficient to provide adequate notice to Defendants under basic pleading requirements.

---

[5] A "person" is defined as "one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries." Cal. Gov. Code § 12925(d).

Accordingly, as a matter of law, Plaintiff's complaint does not allege a claim for aiding and abetting under FEHA.

**IV. CONCLUSION**

For the foregoing reasons, Pro Staff's motion to dismiss is DENIED in part and GRANTED in part.  As Plaintiff has failed to allege a cause of action for aiding and abetting under FEHA, this claim is DISMISSED, without prejudice.

IT IS SO ORDERED.

Dated: July 30, 2009

DEAN D. PREGERSON
United States District Judge